******************************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# JOSEPH SALA *v.* PREMIER IMAGING HOLDINGS, LLC, ET AL.
## (AC 48880)

Cradle, C. J., and Westbrook and Wilson, Js.

*Syllabus*

The defendants appealed from the trial court's judgment granting the plaintiff physician's application to vacate an arbitration award that upheld in favor of the defendants the validity of a noncompete clause. The defendants claimed that the court improperly determined that the arbitration award violated public policy embodied in the statute (§ 20-14p) that limits the scope of covenants not to compete involving physicians. *Held*:

The trial court properly granted the plaintiff's application to vacate the arbitration award, as the award sanctioned a restraint on the plaintiff's ability to practice his profession that far exceeded both the temporal and geographic limits, contained in § 20-14p, that the legislature determined to be reasonable as a matter of public policy, and, accordingly, judicial enforcement of the award would violate public policy.

Argued May 28—officially released August 4, 2026

*Procedural History*

Application to vacate an arbitration award, brought to the Superior Court in the judicial district of Hartford and tried to the court, *Klau, J.*; judgment granting the application to vacate the arbitration award, from which the defendants appealed to this court. *Affirmed*.

*Scott T. Garosshen*, with whom were *Sandra Marin Lautier* and, on the brief, *Tyler G. Haas* and *Robert W. Horton*, pro hac vice, for the appellants (defendants).

*Cristina Salamone*, for the appellee (plaintiff).

*Opinion*

WESTBROOK, J. The defendants, Premier Imaging Holdings, LLC (Premier), and RAH Equity Holdings, LLC (RAH Equity), appeal from the judgment of the trial court granting the application of the plaintiff, Joseph Sala, a radiologist, to vacate an arbitration award that upheld in favor of the defendants the validity of a noncompete clause. The defendants claim on appeal

that the court improperly determined that the arbitration award violated public policy embodied in General Statutes § 20-14p, which places limitations on the scope of covenants not to compete involving physicians.[1] We disagree with the defendants and affirm the judgment of the court.[2]

The following facts, as set forth by the court in its memorandum of decision, and procedural history are relevant to our review of the defendants' claim. "At

[1]General Statutes § 20-14p provides in relevant part: "(a) For purposes of this section: **(1)** 'Covenant not to compete' means any provision of an employment or other contract or agreement that creates or establishes a professional relationship with a physician and restricts the right of a physician to practice medicine in any geographic area of the state for any period of time after the termination or cessation of such partnership, employment or other professional relationship; **(2)** 'physician' means an individual licensed to practice medicine under this chapter; and **(3)** 'primary site where such physician practices' means any single office, facility or location where such physician practices, as mutually agreed to by the parties and defined in the covenant not to compete.

"(b) (1) A covenant not to compete is valid and enforceable only if it is: **(A)** Necessary to protect a legitimate business interest; **(B)** reasonably limited in time, geographic scope and practice restrictions as necessary to protect such business interest; and **(C)** otherwise consistent with the law and public policy. The party seeking to enforce a covenant not to compete shall have the burden of proof in any proceeding.

"(2) A covenant not to compete that is entered into, amended, extended or renewed on or after July 1, 2016, shall not: **(A)** Restrict the physician's competitive activities (i) for a period of more than one year, and (ii) in a geographic region of more than fifteen miles from the primary site where such physician practices; or **(B)** be enforceable against a physician if (i) such employment contract or agreement was not made in anticipation of, or as part of, a partnership or ownership agreement and such contract or agreement expires and is not renewed, unless, prior to such expiration, the employer makes a bona fide offer to renew the contract on the same or similar terms and conditions, or (ii) the employment or contractual relationship is terminated by the employer, unless such employment or contractual relationship is terminated for cause. . . .

"(4) Each covenant not to compete entered into, amended or renewed on and after July 1, 2016, shall be separately and individually signed by the physician. . . ."

[2]The defendants also challenge the court's conclusion that the arbitration award should be vacated on the ground that the arbitrator manifestly disregarded the law. Because we uphold the court's decision to vacate the arbitration award on the ground that it violated public policy, we do not consider the propriety of this alternative basis for vacating the award.

all relevant times, [the plaintiff] was a radiologist duly licensed to practice medicine in the state of Connecticut. He was a shareholder and employee of [Radiology Associates of Hartford, PLLC (formerly Radiology Associates of Hartford, P.C.) (RAH)].

"In the fall of 2021, RAH entered into discussions with Premier concerning the sale of the radiology practice. On or about March 23, 2022, [the plaintiff] and his colleagues at RAH executed a [stock purchase agreement] with Premier. Pursuant to the [stock purchase agreement], RAH sold to Premier the equity interests of an entity that owned RAH's nonclinical assets. In exchange for executing the [stock purchase agreement], [the plaintiff] and his colleagues received substantial payouts for their ownership interests. [The plaintiff] received approximately $2.3 million in cash proceeds plus additional equity. . . . [The plaintiff] and his colleagues [also] became members (i.e., part owners) of a new company, [RAH Equity].

"When [the plaintiff] and his colleagues executed the [stock purchase agreement], they also entered into a [services agreement] with LucidHealth . . . . Together, the execution of the [stock purchase agreement and services agreement] are referred to as the Transaction.

"The Transaction specifically required and was conditioned upon [the plaintiff] and his colleagues executing a series of agreements, including the Limited Liability Company Agreement, dated March 23, 2022 (LLC Agreement). Execution of the LLC Agreement was a material condition and inducement to Premier's willingness to close the Transaction.

"The LLC Agreement includes a restrictive covenants provision, § 14.21, pursuant to which [the plaintiff] and his colleagues promised not to compete with [RAH Equity] within a defined territory for a period of no less than two years. The defined territory included certain

specified hospitals and radiology centers and a twenty-five mile radius from those defined locations.[3] . . .

"On June 10, 2023, [the plaintiff] gave notice that he was resigning, effective June 9, 2024, and would begin working for Radiologic Associates of Middletown immediately thereafter. On or about March 27, 2024—nearly a year after [the plaintiff] submitted his resignation notice—the defendants served him with a demand to arbitrate before the American Arbitration Association (AAA).[4] The statement of claim filed with the AAA

---

[3]Section 14.21 of the LLC Agreement provides in relevant part: "(a) Other than on behalf of [RAH Equity] or its Affiliates, no Member shall, either directly or indirectly, individually or by or through any Covered Entity or in collaboration with an Affiliate, whether for pay or otherwise, for such Member's applicable Restricted Period:

"(i) form or assist others in forming, own any interest in, manage, be employed by, perform services for, become an employee, officer, director or consultant for, invest in (whether through debt or equity securities), otherwise assist (financially or otherwise), or lend such person's name, counsel or assistance to any Competitor . . . ."

Article I of the LLC Agreement defines "Restricted Period" to include the time someone is a member "and for two (2) years thereafter . . . ." A "Competitor" is defined in the LLC Agreement as "any person or entity that engages in Restricted Activities within the Territory." "Restricted Activities" is defined as, inter alia, "providing, supervising, managing or arranging for radiology services . . . ." The "Territory" is defined as Saint Francis Hospital, Johnson Memorial Hospital, Mount Sinai Rehabilitation Hospital, Avon Imaging Center, Bloomfield Imaging Center, Enfield Imaging Center, Glastonbury Imaging Center, Rocky Hill Imaging Center, and any other facilities at which RAH or its affiliates had rendered services during a member's last year of employment or at which they had signed or been awarded a contract, plus a twenty-five mile radius from all such facilities.

[4]The LLC Agreement contained an arbitration clause that provided in relevant part: "Any unresolved controversy or claim arising from or relating to this Agreement or breach thereof shall be settled by arbitration administered by the [AAA] in accordance with its Commercial Arbitration Rules, then in effect. The decision of arbitration shall be final and conclusive upon the parties and judgment upon the award rendered by the arbitrator may be entered in any court having competent jurisdiction. The arbitration proceedings shall be held in Hartford Connecticut . . . . The arbitrator shall have authority to award only (a) money damages, (b) attorneys' fees, costs and expert witness fees to the prevailing party, and (c) sanctions for abuse or frustration of the arbitration process. The arbitrator's compensation, and the

sought a declaration that § 14.21 of the LLC Agreement is enforceable and that [the plaintiff's] employment with Radiologic Associates of Middletown would breach § 14.21 of the LLC Agreement. [The] arbitration was one of four that the defendants filed against radiologists who allegedly violated the noncompete provision. Each arbitration demand requested the same relief, i.e., a declaratory judgment that the noncompete provision was enforceable.

"Before and during the arbitration, [the plaintiff] objected to the arbitrability of the dispute concerning the noncompete provision and the arbitrator's authority to issue a declaratory ruling. [The plaintiff] repeatedly cited § 20-14p in his briefs and arguments to the arbitrator. . . .

"On August 21, 2024, the arbitrator issued [the following] two sentence award in the arbitration involving [the plaintiff]: The noncompetition provisions within the LLC Agreement are valid and binding upon the parties. [The plaintiff's] employment at Radiologic Associates of Middletown prior to the two year deadline (two years following when [the plaintiff's] membership in [RAH Equity] terminated, or June 9, 2026) would be a breach of the LLC Agreement." (Footnotes added; internal quotation marks omitted.)

The plaintiff filed the underlying application to vacate the arbitration award on September 19, 2024.[5] The plaintiff raised three grounds in support of the application.

administrative costs of the arbitration, shall be borne by the parties in the manner set forth in the arbitration award, as determined by the arbitrator. Notwithstanding the foregoing provisions . . . the parties are not required to arbitrate any issue for which injunctive relief is sought by any party hereto and any party may seek injunctive relief in any federal or state court having competent jurisdiction."

[5]The court, by agreement of the parties, consolidated the action on the application to vacate with an action that the plaintiff and two of his physician colleagues, Sean McKeon and Michael Biondi, had filed against the defendants in July 2024 (consolidated action), in which they asserted, inter alia, claims of abuse of process and violation of the state's antitrust act, General Statutes § 35-24 et seq. See *Biondi* v. *RAH Equity Holdings, LLC*, Superior Court, judicial district of Hartford, Docket No. CV-24-6188817-S.

First, he argued that the arbitration clause in the LLC Agreement did not authorize the arbitrator to award declaratory relief, citing a prior Superior Court ruling that had addressed the same agreement and arbitration clause at issue in the present case. See *Bee* v. *RAH Equity Holdings, LLC*, Superior Court, judicial district of Hartford, Docket No. CV-24-6184373-S (November 20, 2024). Second, the plaintiff argued that, even if a claim for declaratory relief was arbitrable under the LLC Agreement, the arbitrator's award was in manifest disregard of the law, namely, § 20-14p. Third, the plaintiff argued that the award violates public policy as embodied in § 20-14p. The parties filed briefs in support of their respective positions on the motion to vacate as well as addressing other motions pending before the court in the consolidated action.[6] See footnote 5 of this opinion. On February 19, 2025, the court, *Klau, J.*, heard oral argument on all outstanding matters.

The court issued a memorandum of decision on June 5, 2025, granting the application to vacate the arbitration award. Because an appeal was pending regarding the Superior Court's decision in *Bee* v. *RAH Equity Holdings, LLC*, supra, Superior Court, Docket No. CV-24-6184373-S, the court elected to assume, arguendo, that the arbitrator had the authority to decide questions of arbitrability and to issue the declaratory judgment.[7] The court next turned to whether the award

[6]In particular, the parties addressed the defendants' motion to confirm the arbitration award and motion to stay the consolidated action and to compel arbitration of the claims raised therein. We note that, in their reply to the plaintiff's opposition to the motion to stay, the defendants acknowledged that, if the court vacated the arbitration award against the plaintiff on the ground that the noncompete provision was unenforceable, the defendants' arbitration claims against McKeon and Biondi would become moot.

[7]The plaintiff has not raised this aspect of the trial court's ruling as a decision that should be reviewed in the event the defendants prevailed on their claims; see Practice Book § 63-4 (a) (1); but, in his appellate brief, raises as an alternative basis for affirming the court's decision that "the arbitrator incorrectly determined that the parties agreed to submit substantive arbitrability questions to an arbitrator." Because we affirm the trial court's decision to vacate the arbitration award on

should nonetheless be vacated on the grounds that the arbitrator manifestly disregarded the law or the award violated public policy. The court first concluded that the plaintiff had met his burden of showing that the arbitrator manifestly disregarded the law because § 20-14p was well-defined, explicit, and clearly applicable to the noncompete clause at issue; the arbitrator was fully aware of § 20-14p; and she nonetheless wilfully chose to ignore and not apply it. See *ARVYS Protein, Inc.* v. *A/F Protein, Inc.*, 219 Conn. App. 20, 35, 293 A.3d 899 (setting forth elements of "highly deferential standard" to prove manifest disregard and noting that standard "is narrow and should be reserved for circumstances of an arbitrator's extraordinary lack of fidelity to established legal principles" (internal quotation marks omitted)), cert. denied, 347 Conn. 905, 297 A.3d 198 (2023).[8] Second, the court concluded that, even if the arbitrator did not manifestly disregard the law, the award violated the clear public policy embodied in § 20-14p and, accordingly, should be vacated on that basis. This appeal followed.

The defendants claim that the court improperly determined that the arbitration award violated the public policy embodied in § 20-14p, which places clear limitations on the scope of covenants not to compete involving physicians. We disagree, and, because our rejection of this claim is dispositive; see footnote 2 of this opinion; we affirm the judgment of the court granting the plaintiff's application to vacate the award.

We begin with relevant principles of law, which include our standard of review. "[A]rbitration is a creature of contract, whereby the parties themselves, by agreement,

---

another ground, we do not consider the propriety or the merits of the plaintiff's argument.

[8]"A litigant seeking to vacate an arbitration award based on alleged manifest disregard of the law bears a heavy burden, as awards are vacated on grounds of manifest disregard only in those exceedingly rare instances where some egregious impropriety on the part of the arbitrator is apparent." (Internal quotation marks omitted.) *Vermont Aerospace Industries, LLC* v. *Schwoeri,* 235 Conn. App. 576, 587, 346 A.3d 1051, cert. denied, 353 Conn. 933, 346 A.3d 516 (2025).

define the powers of the arbitrators. . . . [T]he extent of our judicial review of the award is delineated by the scope of the parties' agreement. . . . [If] the parties have not restricted the scope of the arbitrator's authority, the resulting award is not subject to de novo review even for errors of law so long as the award conforms to the submission. . . .

"The long-standing principles governing consensual arbitration are, however, subject to certain exceptions. Although we have traditionally afforded considerable deference to the decisions of arbitrators, we have also conducted a more searching review of arbitral awards in certain circumstances. In *Garrity* v. *McCaskey*, [223 Conn. 1, 6, 612 A.2d 742 (1992)], [our Supreme Court] listed three recognized grounds for vacating an award: (1) the award rules on the constitutionality of a statute . . . (2) the award violates clear public policy . . . or (3) the award contravenes one or more of the statutory proscriptions of [General Statutes] § 52-418 (a) [or General Statutes § 52-407ww (a)].[9] . . . The judicial recognition of these grounds for vacatur evinces a willingness, in limited circumstances, to employ a heightened standard

[9]Section 52-407ww is the successor statute to § 52-418 and governs applications to vacate arbitration awards rendered pursuant to an arbitration agreement executed on or after October 1, 2018. The LLC Agreement was executed in 2022, and, thus, although the application to vacate referenced § 52-418, § 52-407ww is the applicable statute. "We perceive no reason why our jurisprudence regarding § 52-418 should not logically also extend to applications to vacate filed pursuant to § 52-407ww." *Evexia Holdings, Inc.* v. *Geurts*, 236 Conn. App. 742, 753 n.11, 350 A.3d 620 (2025). The constitutionality and public policy grounds for vacating an arbitration award come from our common law. See *Garrity* v. *McCaskey*, supra, 223 Conn. 6. The court in *Garrity* recognized that, on occasion, courts had implied that the basis for the common-law grounds to vacate could "be found within the statutory scheme of § 52-418 (a) (4)," but clarified that it was "more appropriate to recognize that the power to determine the constitutionality of a statute and the power to strike an arbitration ruling as violative of public policy exist apart from any particular grant of authority from the legislative branch. Because of the multiple sources authorizing judicial review of arbitration awards, we therefore deem inaccurate the implication in these earlier cases that § 52-418 (a) (4) is the sole source of the court's power of review." (Emphasis omitted.) Id.

of judicial review of arbitral conclusions, despite the traditional high level of deference afforded to arbitrators' decisions when made in accordance with their authority pursuant to an unrestricted submission. . . .

"A court's refusal to enforce an arbitrator's award . . . because it is contrary to public policy is a specific application of the more general doctrine, rooted in the common law, that a court may refuse to enforce contracts that violate law or public policy. . . . This rule is an exception to the general rule restricting judicial review of arbitral awards. . . . The exception, however, is narrowly construed and . . . is limited to situations where the contract as interpreted would violate some explicit public policy that is well defined and dominant, and [can] be ascertained by reference to the laws and legal precedents and not from general considerations of supposed public interests. . . . To be vacated under the narrow public policy exception, the award must be clearly illegal or clearly violative of a strong public policy. . . . Furthermore, [t]he party challenging the award bears the burden of proving that illegality or conflict with public policy is clearly demonstrated." (Citations omitted; footnote added; internal quotation marks omitted.) *HH East Parcel, LLC* v. *Handy & Harman, Inc.*, 287 Conn. 189, 196–98, 947 A.2d 916 (2008).

"[If] a party challenges a consensual arbitral award on the ground that it violates public policy, and where that challenge has a legitimate, colorable basis, de novo review of the award is appropriate in order to determine whether the award does in fact violate public policy. . . . To determine whether an arbitration award must be vacated for violating public policy, we employ a two-pronged analysis. . . . First, we must determine whether the award implicates any explicit, well-defined, and dominant public policy. . . . To identify the existence of a public policy, we look to statutes, regulations, administrative decisions, and case law. . . . Second, if the decision of the arbitrator does implicate a clearly defined public policy, we then determine whether the contract, as construed

by the arbitration award, violates that policy." (Citations omitted; internal quotation marks omitted.) *Burr Road Operating Co. II, LLC* v. *New England Health Care Employees Union, District 1199*, 316 Conn. 618, 630–31, 114 A.3d 144 (2015).

Turning to the matter before us, we first consider whether the arbitral award at issue implicates any explicit, well-defined, and dominant public policy. We conclude that it does.

First, it is well established under our common law that overly broad or otherwise unreasonable covenants not to compete can impose an undue restraint on trade that may harm the individual who is subject to it as well as being injurious to the public. See *Deming* v. *Nationwide Mutual Ins. Co.*, 279 Conn. 745, 761, 905 A.2d 623 (2006). "We recognize the strong public policy favoring freedom of contract and the principle that the court should not rescue sophisticated commercial parties from the terms of their bargain. . . . Nevertheless, our Supreme Court has long recognized that a court's deference to the rights of parties to enter into contracts as they see fit does not extend to contracts that violate public policy. For example, the Supreme Court, in evaluating a covenant not to compete, stated more than 100 years ago: The public [has] an interest in every person's carrying on his trade freely; so has the individual. All interference with individual liberty of action in trading and all restraints of trade of themselves, if there is nothing more, are contrary to public policy, and therefore void. That is the general rule. But there are exceptions: restraints of trade and interference with individual liberty of action may be justified by the special circumstances of a particular case. It is a sufficient justification, and, indeed, it is the only justification, if the restriction is reasonable—reasonable, that is, in reference to the interests of the parties concerned, and reasonable in reference to the interests of the public, so framed and so guarded as to afford adequate protection to the party in whose favor it is imposed, while at the same time it is in no way

injurious to the public." (Citations omitted; internal quotation marks omitted.) *DeLeo* v. *Equale & Cirone, LLP*, 202 Conn. App. 650, 673–74, 246 A.3d 988 (citing *Samuel Stores, Inc.* v. *Abrams*, 94 Conn. 248, 252, 108 A. 541 (1919)), cert. denied, 336 Conn. 927, 247 A.3d 577 (2021); see also *Beit* v. *Beit*, 135 Conn. 195, 198, 63 A.2d 161 (1948) ("unless they meet certain criteria [noncompete clauses] constitute a restraint upon trade which is against public policy").

Second, our state legislature, as the representative of the public, is vested with the responsibility to declare the public policy of the state through the statutes it enacts. See *Zweig* v. *Marvelwood School*, 203 Conn. App. 818, 838–39, 252 A.3d 367 (2021) (recognizing prerogative of legislature to set public policy). Section 20-14p, which originally was codified in 2016; see Public Acts 2016, No. 16-95, § 1; is consistent with our common law's disfavor of restraints on trade in that it places bright-line limitations on the validity and enforceability of a contractual covenant not to compete affecting physicians. See footnote 1 of this opinion. The legislature expressed in clear and unambiguous terms that noncompete clauses directed at physicians generally would be invalid and unenforceable unless they were necessary to protect a legitimate business interest and *were reasonably limited in both time and geographic scope*. For covenants entered into after 2016, the statute expressly prohibits unreasonable restrictions that extend beyond one year or in a geographic area of more than fifteen miles from the primary site where the physician practiced.

Having reviewed the legislative history, there is no question that legislators were concerned with the potential for undue hardship on the public that could result from unreasonably broad restrictive covenants and, as the arbiters of public policy, elected to expressly quantify the outer limits of reasonableness rather than leave that determination to the court. In short, the restrictions in § 20-14p evidence an explicit, well-defined, and dominant public policy against unreasonable restrictions on

a physician's ability to practice his or her profession and help refine the already existing and strong public policy in our common law that disfavors unreasonable noncompete clauses. Because the noncompete clause restricted the plaintiff from practicing radiology for a period of two years and within a geographic area extending at least twenty-five miles, it clearly implicated the restrictions set forth in § 20-14p.

Having determined that the arbitral decision before us implicates a clearly defined public policy, we turn to whether the noncompete clause in the LLC Agreement, as construed by the arbitration award, violates that policy. We agree with the trial court that it does.

Here, the arbitral award in question declared that the noncompete provision in the LLC Agreement, which was executed in 2022 after the enactment of § 20-14p, was valid and binding on the parties and that the plaintiff's employment by Radiologic Associates of Middletown prior to the two year deadline set forth in the noncompete provision constituted a breach of the LLC Agreement. The award, thus, sanctions a restraint on the plaintiff's ability to practice his profession that far exceeds both the temporal and geographic limits that our legislature has determined to be reasonable as a matter of public policy. Having carefully considered the competing arguments of the parties, we are convinced that, because judicial enforcement of the award would violate public policy, the trial court properly granted the plaintiff's application to vacate.

The judgment is affirmed.

In this opinion the other judges concurred.